UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

United States of America        )
                                    )
    v.                            )       USDC No. 22-cr-11102 (JEB)
                                    )
Mandy Robinson-Hand,    *defendant*.   )

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, through undersigned counsel Nathan I. Silver, II, Esq., appointed by this Court under the Criminal Justice Act, submits this memorandum to aid at sentencing on January 13, 2023 at 11 o'clock a.m. when she appears in-person before the Court for her sentencing hearing.

1. The defendant was arrested on March 11, 2022, in criminal complaint 22-mj-0049-02 (ZMF) issued in this case, charged along with her husband, Charles Hand, III.   She appeared initially on March 22, 2022, before Magistrate Zia M. Faruqui, when she was released on her own recognizance with conditions. (ECF Doc. 6, March 22, 2022)  Since then, she has been in compliance with the terms Judge Faruqui imposed.

2. The defendant stands charged, first in a criminal complaint, later in a criminal Information filed on March 31, 2022, with four misdemeanor offenses resulting from her involvement in the Capitol Hill protests and riot of January 6, 2021: (a) Entering and Remaining in a Restricted Building (Count One), in violation of 18 U.S.C. §1752(a)(1); (b) Disorderly and Disruptive Conduct Which Impedes the Conduct of Government Business, in violation of 18 U.S.C. §1752(a)(2); (c) Disruptive Conduct in the  Capitol Buildings, in violation of 40 U.S.C.

5104(e)(2)(D), and (d) Demonstrating, Picketing or Parading in a Capitol Building, in violation of 40 U.S.C. 5105(e)(2)(G) ("Demonstrating").

3.   On October 14, 2022, per a Plea Agreement with the United States, the defendant entered a plea of guilty to Demonstrating, a petty offense which carries a maximum sentence up to six (6) months imprisonment, a fine of up to $5,000, a term of probation not to exceed five (5) years and a $10 special assessment.  As a petty offense, the U.S. Sentencing Guidelines do not apply. (Presentence Investigation Report ("PSI"), page 7, ¶23)  The defendant agreed to pay $500.00 in restitution toward defraying the cost of repairing damage to the U.S. Capitol, repairs which were necessary after the riot.

4.   Defendant and her counsel have reviewed the final PSI.  Defendant submitted several objections to U.S. Probation Off. Aidee Gavito. None of the objections pertained to her conduct on January 6 or her legal liability for it; all but one, which relates to a balance in a bank account (PSI page 13, ¶54) pertained to factual errors or misspellings.

5.   While in the Capitol or on its grounds, the defendant did not commit any violent or destructive act, either to persons or property.  Nor did she encourage her husband or unknown others to do so.

6. The defendant has a modest criminal record, consisting of a felony drug conviction from Georgia in 2008 and an arrest for Theft by Receiving Stolen Property ten years earlier, in 1998, with no apparent conviction. (PSI, pp. 8-9, ¶¶25, 28 and 29)

7.   The defendant's conduct consisted of taking part in a demonstration, the purpose of which was to show support for then-President Trump and to express her disapproval of an election she felt was not administered fairly.  While on restricted grounds, she saw downed

fencing and tear gas deployed against rioters but nonetheless entered the Capitol building amidst signs that she did not have permission to do so. She wrote on Facebook, in posts that she later deleted, "We're in the capital (sic). Taking our house back," and "We've been tear gassed etc." (ECF Doc. 2, "Statement of Offense," page 4, ¶¶9-11)  In effect, the defendant took part in the rally, and later entered the Capitol to make a point.  Once she had done so, she left the building with her husband.

9. Defendant submits that her conduct was disruptive, not purposely but incidentally.  It was not to cause trouble or interfere with the certification of the electoral votes for the president-elect that she and her husband came to D.C. on January 6th; it was simply to attend a rally and a peaceful protest.  She, like hundreds of others, entered the Capitol after others had breached it; there's no reason to think that she and her husband would have broken windows or attacked police in order to enter.  Rather, they exploited an opportunity created by others.  The Capitol Police and Metropolitan Police Department officers. whose job it was to keep the Capitol secure and closed to unauthorized persons, were overrun by those who violently breached the building.  In the heat of the moment, the defendant brought her protest inside, without acting violently against persons or property.[1]  Yet the defendant recognizes regrettably that her presence likely hampered the efforts of the police, whose hands were more than full, to keep order.

---

[1] Contrast the conduct of those who entered the Capitol, albeit when the Capitol was open, to protest the nomination of Brett Kavanaugh to the Supreme Court.  Their stated purpose, planned in advance, was to disrupt the hearings, which they did.  All but one of the protesters were charged under D.C. Code statutes, not federal law. For a discussion of this, see Defendant's Sentencing Memorandum, *United States v. Jenny Cudd,* 21-cr-0068 (TNM), pp. 49-54.  Like the defendant, Ms. Cudd made a number of inflammatory statements, and coincidentally spent the same amount of time, 19 minutes, inside the Capitol.  Ms. Cudd pled guilty to Entering and Remaining on a Restricted Building or Grounds, a Class A misdemeanor and guideline offense in violation of 18 U.S.C. 1752(a)(1), and was sentenced to two (2) months probation, a $5,000.00 fine and $500.00 in restitution.  Defendant acknowledges that the appalling nature of the events of January 6 was different in kind from that involved with  the Kavanaugh hearings.

10.  The defendant submits that when she and her husband saw protesters fighting with the police, she knew it was time to leave.  Once home in Georgia, and they saw how bad the riot and attack really were, they contacted their local sheriff for guidance.  He advised them to sit tight and wait for the FBI to contact them as they did their investigation.  During her later interview with the FBI, she said  "...she did not know the certification was going on and that she was disturbed by people fighting the police and causing property damage." (Government's Sentencing Memorandum, ECF Doc. 37, page 11)

11.  The defendant submits that her taking of responsibility in pleading guilty is itself an expression of contrition and remorse.

12. Under 18 U.S.C. §3553(a) the following factors: (a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner….

10.  The defendant has been disabled since 2012 owing to a serious automobile accident, the second of her adult life. (The first was in 2001) (PSI, page 11, ¶41)  She has not been gainfully employed since.  That has had an ill effect on her mental health, which she tries to

relieve by being as helpful as possible to her husband, often bringing him to and from his job, and being as active as possible with her church. She also has responsibilities helping to raise her husband's teenage daughter, his from a previous marriage.

11.  The government has recommended a sentence of forty-five (45) days incarceration, a period of three (3) years probation, sixty (60) hours of community service, and a payment of $500.00 in restitution (an amount to which the defendant in her Plea Agreement has agreed to pay) (ECF Doc. 37, page 1)  The U.S. Probation Office has recommended a sentence of eighteen (18) month probation, with no term of incarceration. (ECF Doc. 39, page 1)

12. A period of probation, in lieu of incarceration, combined with community service, would satisfy the "need for the sentence…to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense."  During this time, the defendant would be answerable to the U.S. Probation Office. She would be subject to the jurisdiction of the Court, knowing that any infraction could lead to revocation of the probationary term, with incarceration to follow.  Such a term would at the same time provide deterrence specific to the defendant, operating as a disincentive to further criminal behavior.

13.  A term of probation would also deter generally.  The public is aware, from the comprehensive coverage of the January 6 events and the arrests that followed, of the serious efforts the government has made to prosecute persons involved with the protests and, in many cases, the violence that was perpetrated.  These cases, from beginning to end, have been watched very closely by the press where defendants live, so the public will be aware of the defendant's responsibility for his conduct.  That can serve to deter others in the future in similar situations.

14.  The defendant submits that a probationary term would satisfy the various §3553 factors.  The Court may also impose, and the defendant is amenable to a requirement of community service.   Last, in the event that this Court believes that incarceration, not probation, is appropriate, the defendant requests that the Court permit her to serve her time in home confinement, with an exception for employment outside the home.

15. For all the reasons noted above, the defendant respectfully requests a sentence of probation combined with community service.

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Brian Brady , Esq., USAO-U.S. Attorney's Office (District of Louisiana) this 11th day of January, 2023.

/s/

_____

*Nathan I. Silver, II*